UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ADAMS EXTRACT & SPICE, LLC,

        Plaintiff,

v.

VAN DE VRIES SPICE CORPORATION

        Defendant/
        Third-Party Plaintiff,

v.

A.A. SAYIA & COMPANY, INC. and
JABS INTERNATIONAL PVT. LTD.

        Third-Party Defendants.

Civil Action No. 11-720 (JAP)

**OPINION**

RECEIVED

DEC 23 2011

AT 8:30_____M
WILLIAM T. WALSH
CLERK

PISANO, District Judge.

        This action was originally filed on February 7, 2011 by Adams Extract & Spice, LLC ("Adams"), a Texas corporation, against Van de Vries Spice Corporation ("VDV"), a New Jersey corporation. Adams alleged that it incurred costs in recalling some of its products after it received notification that a shipment of red pepper spice supplied by VDV tested positive for salmonella. On May 17, 2011, VDV filed a Third-Party Complaint against JABS International Pvt. Ltd. ("JABS"), an Indian company, and A.A. Sayia & Company, Inc. ("Sayia"), alleging that JABS supplied them with the contaminated spice and that Sayia is vicariously liable as JABS's agent in the United States. Presently before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on July 17, 2011 by Third-Party Defendant Sayia. Third-Party Plaintiff VDV opposes the Motion. The Court decides the matter without oral

argument pursuant to Federal Rule of Civil Procedure 78. For the reasons below, this Motion shall be granted in part and denied in part.

I.   Background[1]

On August 5, 2009, VDV informed Adams that 11,000 pounds of red pepper spice it had sold to Adams had tested positive for salmonella. Adams had already incorporated the contaminated spice into various products sold under its name, and therefore issued a public recall of those products on August 7, 2009. In February 2011, Adams filed a Complaint against VDV for supplying Adams with the contaminated spice, alleging negligence (Adams Compl. 3-4), breach of contract (*id.* at 4), breach of express and implied warranties (*id.* at 5), and strict product liability (*id.* at 5-6).

In May 2011, VDV filed a Third-Party Complaint against JABS and Sayia. VDV alleges that JABS manufactured, packaged and shipped the contaminated spice from its place of business in India to New York along with a "Certificate of Sterilization," and that Sayia arranged the sale and importation, and otherwise acted as JABS's agent in the United States. (VDV Compl. 2-3, 9-10.) VDV cites an importation contract dated July 23, 2008 and amended February 25, 2009, signed by JABS and Sayia. (*Id.* at 3.) VDV alleges that it shipped the spice to its customers in its original packaging, without any alteration. (*Id.* at 3.) The claims in this Third-Party Complaint are identical as to both Third-Party Defendants, because VDV alleges an agency relationship between JABS and Sayia: contribution under the New Jersey Tortfeasor Contribution Act for any liabilities that VDV might be found to have as to Adams, (*id.* at 3, 10-11), common-law indemnification for such liabilities (*id.* at 5, 11-12), contribution and

---

[1] The facts alleged must be taken as true in deciding this Motion to Dismiss.

indemnification under the New Jersey Products Liability Act (*id.* at 5-6, 12-13), breach of contract (*id.* at 6-7, 13-14), breach of express and implied warranties (*id.* at 7, 14), contractual indemnification (*id.* at 8, 15), and strict liability under the New Jersey Products Liability Act (*id.* at 8-9, 15-16).

On July 15, 2011, Sayia filed the instant Motion to Dismiss. Sayia claims that VDV's allegation of an agency relationship is nothing more than a legal conclusion without any factual support, and that in fact Sayia acted only as a broker in the transaction between JABS and VDV. The Motion alleges that Sayia was never itself a party to any agreement with VDV. It notes that on the importation contract cited by VDV in its Complaint, Sayia is denoted as "broker" on the signature block. (Mot. to Dismiss 3, Ex. D, E.) In addition, the Motion argues that this is a breach of contract action, and that therefore the tort claims are precluded as a matter of law.

## II.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. In deciding a Motion to Dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). All reasonable inferences must be made in the Plaintiff's favor. *Nami v. Fauver*, 82 F.3d 63 (3d Cir. 1996); *Oshiver v. Levin, Fishbien, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994).

Recently, the Supreme Court refashioned the standard for addressing a motion to dismiss under Rule 12(b)(6). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The *Twombly* Court

stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 555 (internal citations omitted); *see also Baraka v. McGreevey,* 481 F.3d 187, 195 (3d Cir. 2007). More recently, the Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).

### III. Failure to sufficiently plead an agency relationship

Sayia alleges that VDV's Complaint is "absolutely devoid of any factual proof of or reference to any . . . agreement of sale or warranty by Sayia," or of any averment that Sayia ever held title to the defective product. (Mot. to Dismiss 7.) It further argues that VDV's allegation of agency, which would lead to vicarious liability on behalf of JABS, is nothing more than a bald legal conclusion. In support, Sayia attaches copies of the contract documents referred to in the Complaint, noting that they are signed by Sayia in the signature block designated as "broker." Sayia urges the court to consider these contracts as evidence directly contradicting the allegations in the Complaint, citing *Mele v. Fed. Reserve Bank of N.Y.,* 359 F.3d 251, 256 n.5 (3d Cir. 2004).

Sayia is correct that the Complaint must allege more than the mere legal conclusion that a principal-agent relationship existed between Sayia and JABS. However, it is incorrect to suggest that the Complaint needs to contain some kind of "proof" of this relationship. (Mot. to Dismiss 7.) Rather, the facts alleged in the Complaint are to be taken as true in deciding the Motion.

Under this standard, the Complaint does contain factual allegations from which it is reasonable to infer that Sayia acted as JABS's agent in the transaction with VDV. In addition to the importation contracts signed by Sayia that were referenced in the Complaint, VDV alleged that Sayia "arranged the sale of the Spice between Jabs and Van de Vries" (VDV Compl. 2, ¶ 13), and that they "arranged for the importation of the Spice." (*Id.* at 3, ¶ 14.)

Although there is clearly a dispute between the parties as to the level of Sayia's involvement and whether it rose to the legally significant level of agency, Sayia has not raised such serious doubts about the allegations that this Court can dismiss them from the case under the 12(b)(6) standard. It is incorrect that Sayia's signature in the "broker" signature block on the importation contracts disposes of VDV's claim that Sayia functioned as a legal agent; the Court cannot assume that these signature blocks capture the extent of Sayia's involvement in the entire transaction. The Complaint does not contend that these importation contracts represent the entire relationship between VDV and Sayia, and the word "broker" on these two documents does not foreclose the possibility that Sayia did in fact function as JABS's agent. Further, the contract documents themselves are extrinsic to the pleadings, and were first introduced by Sayia in this Motion. Motions to Dismiss must be based on the facts alleged in the Complaint, not based on documents that may be selectively introduced by the moving party.

The Court finds that the Complaint, as it is, sufficiently states the claim that Sayia is vicariously liable as an agent for JABS. However, even if the Court decided otherwise, VDV would have had the opportunity to amend its Complaint. The more specific allegations in VDV's Opposition to this Motion would clearly cure any deficiencies alleged by Sayia. For example, the allegation that Sayia negotiated the price and terms of the transaction on behalf of JABS, and that VDV "never had direct contact with Jabs" (Opp. to Mot. to Dismiss 1, 8-9)

constitute more specific support for the principal-agent relationship than the allegations VDV included in its Complaint. Again, VDV need not prove these allegations in order to survive a Motion to Dismiss.

### IV. The Economic Loss Doctrine

The economic loss doctrine precludes consumers from bringing negligence and strict liability claims for damages arising from the purchase of a defective good, limiting such plaintiffs to contractual remedies. *See, e.g., Alloway v. General Machine Indus.*, 149 N.J. 620 (1997). In accordance with this doctrine, the New Jersey Products Liability Act defines "harm so as to exclude damage a defective product does to itself." *Dean v. Barrett Homes, Inc.*, 204 N.J. 286, 304 (N.J. 2010). As the New Jersey Supreme Court recently explained, "the [Products Liability] Act is not concerned with providing a consumer with a remedy for a defective product per se; it is concerned with providing a remedy for the harm or the damage that a defective product causes to people or to property." *Id.* Thus, products liability remedies may still be available to the purchaser of a defective product for losses other than damage to the product itself.

The integrated product doctrine is essentially an expansion of the economic loss doctrine, precluding strict liability and negligence remedies when a defective product is incorporated into another product that is then damaged. *Id.* at 298. Whether or not the doctrine applies depends upon a court's determination of whether or not the final product incorporating the defective component can fairly be considered a single "integrated whole." *Id.* at 302 (quoting Restatement (Third) of Torts: Product Liability § 21). For example, in *Dean v. Barrett Homes*, the New Jersey Supreme Court held that exterior siding on houses was not "an integral part of the

structure itself," and that therefore, tort recovery was available to consumer-homeowners claiming damage to their homes caused by the siding. *Id.* at 303. However, this recovery was limited to damage caused to the structure and its environs, and not to the product itself. *Id.* at 305.

The question this Court faces, then, is whether or not the spice blends containing the contaminated red pepper should be considered a single integrated product, thereby precluding products liability claims in this case. VDV asserts that this determination is too complex to be decided in a 12(b)(6) motion, and indeed the *Dean* court wrote that "[d]eciding whether one product is sufficiently integrated into another for purposes of applying the doctrine is a significant undertaking." *Id.* at 302. Nevertheless, the law as applied to this case weighs heavily in favor of considering the spice blends integrated products. Several cases with very similar factual scenarios have come to this conclusion, and VDV is incorrect in its contention that these cases have been abrogated by *Dean*.

Most notable for their similarity to the facts here are two 2008 District of New Jersey case applying New Jersey law. In *International Flavors & Fragrances, Inc. v. McCormick & Co.*, the defendant supplied the plaintiff with paprika powder that was infested with cigarette beetles. 575 F. Supp. 2d 654, 655 (D.N.J. 2008). The plaintiff claimed damages relating to its products, including barbeque seasoning, that had incorporated the contaminated paprika. *Id.* at 656. The parties disputed whether or not the barbeque seasoning was "property other than the product itself," and whether damage to that product could support a product liability claim. *Id.* at 658. After discussing the economic loss doctrine under New Jersey law, *id.* at 659-60, the court determined that plaintiff's strict liability and negligence claims were precluded by the integrated product doctrine. *See also Travelers Indem. Co. v. Dammann & Co., Inc.*, 592 F.Supp.2d 752

(D.N.J. 2008) (applying the integrated product doctrine to vanilla extract that had been made with mercury-contaminated vanilla beans).

*Dean* did not abrogate these federal cases as VDV urges here, but rather it referred to them as examples of federal courts applying the integrated product doctrine in cases controlled by New Jersey law. *Dean*, 298-299. The facts and reasoning in *Dean* leading to the availability of certain tort claims in that case are also clearly distinguishable from this case and the very similar federal cases described above. First, *Dean* applied the doctrine to a defective product that was added to the basic structure of a house, rather than to a blended spice product. The opinion itself notes that houses may be unique: "Particularly in the case of houses, a product that is merely attached to or included as part of the structure is not necessarily considered to be an integrated part thereof." *Dean*, 204 N.J. at 302.

Further, the reasoning supporting the application of the economic loss doctrine in all of these cases, including *Dean*, militates in favor of applying it to the facts at hand. Where the damages occur "at the core of a commercial transaction," they are compensable only in contract. *Int'l Flavors*, 575 F.Supp.2d at 660 (quoting *In re Merritt Logan, Inc.*, 901 F.2d 349, 362 (3d Cir. 1990)). This is because the parties take potential consequential damages into account when they negotiate prices, warranties, and other elements of a contract for the purchase of goods. *Id.* Indeed, when the New Jersey Supreme Court first adopted the economic loss doctrine, it did so because "the U.C.C. is the more appropriate vehicle for resolving commercial disputes arising out of business transactions between persons in a distributive chain." *Spring Motors Distribs. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660, 688 (N.J. 1985). In *Alloway*, the New Jersey Supreme Court again explained that

> [t]ort principles more adequately address the creation of an unreasonable risk of harm when a person or other property sustains accidental or unexpected injury.

> When, however, a product fails to fulfill a purchaser's economic expectations, contract principles, particularly as implemented by the U.C.C., provide a more appropriate analytical framework.

*Alloway*, 695 A.2d at 268. Importantly, because contract remedies include incidental and consequential damages, a plaintiff "can adequately seek compensation for its full economic loss even if it is prohibited from pursuing its strict liability claim." *Int'l Flavors*, 575 F.Supp.2d at 660 n.6 (quoting *Alloway*, 696 A.2d at 267, 269). *See Travelers Indem. Co. v. Dammann & Co.*, 592 F. Supp. 2d 752, 759-760 (D.N.J. 2008).

Although no explicit reference was made to this distinction by the New Jersey Supreme Court in *Dean*, the plaintiffs in that case were consumer homeowners, with no way of protecting themselves ahead of time through negotiated contracts with the manufacturer of the defective siding.

> [C]ourts have tended to focus on the circumstances and context giving rise to the injury in determining whether alleged losses qualify as "other property" damage. Specifically, in the context of a commercial transaction between sophisticated parties, injury to other property is not actionable in tort if the injury was or should have been reasonably contemplated by the parties to the contract. In such cases the failure of the product to perform as expected will necessarily cause damage to other property, rendering the other property damage inseparable from the defect in the product itself.

*Travelers Indem. Co. v. Dammann & Co.*, 592 F. Supp. 2d 752, 760-763 (D.N.J. 2008) (quoting *Palmetto Linen Service, Inc. v. U.N.X., Inc.*, 205 F.3d 126, 129-30 (4th Cir. 2000)).

In this case, the potential for damage to spice blends that incorporate the contaminated red pepper was foreseeable by all parties to the transaction. *See also Int'l Flavors*, 575 F. Supp. 2d at 661-662 (citing similar decisions and reasoning in the Fourth and Eighth Circuits). Thus, the reasoning of the New Jersey Supreme Court in applying the economic loss doctrine applies here. VDV has not alleged that the contaminated spice caused any damage other than to the product itself, and therefore its negligence and product liability claims are precluded.

## V.     Conclusion

For the foregoing reasons, the Third Party Complaint has sufficiently stated a claim for relief against Third-Party Defendant Sayia, and therefore Sayia's Motion to Dismiss must be denied.  However, the economic loss doctrine precludes VDV from bringing negligence claims and strict liability claims under the New Jersey Products Liability Act based on their allegations surrounding their purchase of a defective product.  Thus, Count Seven of the Third-Party Complaint is hereby dismissed.  An appropriate order follows.

JOEL A. PISANO
United States District Judge

Dated: December 23, 2011